UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| MARC WILSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:17CV4 HEA ) |
| JAYNA STEVENSON, | ) ) |
| Defendant. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court upon the motion of defendant Jayna Stevenson to dismiss the complaint filed by plaintiff Marc Wilson, a prisoner who is incarcerated at Northeast Correctional Center. Defendant seeks the dismissal of the complaint because, *inter alia*, the amount in controversy is insufficient for diversity jurisdiction pursuant to 28 U.S.C. § 1332. Defendant also states that venue is improper. For the reasons discussed below, the Court will direct plaintiff to show, by a preponderance of the evidence, that the amount in controversy is greater than the jurisdictional amount, and to also provide information related to venue.

### Background

Condensed and summarized, plaintiff's allegations are as follows. On March 1, 2012, following a criminal conviction in the State of Missouri, plaintiff executed a power of attorney (hereafter "POA") giving defendant control over his financial affairs and assets so she could manage them on his behalf while he was incarcerated. Defendant failed to make plaintiff's mortgage payments, despite the fact that plaintiff had enough money to make such payments. Defendant's failure to make the mortgage payments caused plaintiff's lender, Wells Fargo, to foreclose on his home, and plaintiff lost $72,000 in home equity.

The POA also gave defendant control over plaintiff's Wells Fargo bank account with a balance of $7,500,[1] which defendant manipulated or stole. Defendant is also responsible for plaintiff's loss of federal veteran's benefits valued at $18,392, home furnishings valued in excess of $12,000, a Nissan Altima valued at $10,000, and "incidental assets" valued at $10,000.[2] He claims that he has suffered actual damages of $131,892, and seeks judgment against defendant in that amount. He also seeks punitive damages of $50,000 and attorney's fees, and he states he has experienced physical and emotional pain and suffering.

Plaintiff asserts that this Court's jurisdiction is based upon 28 U.S.C. § 1332, because there is complete diversity and the amount in controversy exceeds $75,000. He also states, without support, that this Court has original jurisdiction over his claims pursuant to 28 U.S.C. § 1343. Regarding venue, while plaintiff averred he was formerly a resident of the state of Texas, he claimed that Missouri was his legal residence, and he claimed that "a substantial part of the events or omissions giving rise to the claims occurred in this District." (Docket No. 1 at 2).

## The Motion to Dismiss

In the instant motion to dismiss, defendant argues, *inter alia*, that plaintiff's allegations regarding the amount in controversy have been made in bad faith. In support, defendant has submitted her sworn affidavit and numerous exhibits. Therein, defendant contends that plaintiff's claim related to the $72,000 home equity is specious because plaintiff, not defendant, is responsible for the home foreclosure. According to her Affidavit and attached exhibits, before the execution of the POA, plaintiff was the sole manager of his financial affairs, including his mortgage. In or around August of 2011, well before the execution of the POA, plaintiff ceased

---

[1] Elsewhere in the complaint, plaintiff claims that defendant "emptied out his bank account of more than $28,000." (Docket No. 1 at 5).

[2] As defendant argues, when added, these amounts total $129,892. However, plaintiff repeatedly asserts that he sustained damages in the amount of $131,892, and seeks judgment in this amount.

making mortgage payments on his home, and was instead submitting, on a monthly basis, a loan modification application to Wells Fargo. In those applications, plaintiff stated he could not afford to pay what he owed Wells Fargo, and that he had exhausted all of his income and resources. Plaintiff prepackaged the application and submitted the same one each month, simply changing each one to reflect the current date. After the execution of the POA, plaintiff directed defendant to submit his prepackaged monthly loan modification application to Wells Fargo. Defendant avers that foreclosure proceedings were already underway before the execution of the POA, and that Wells Fargo had in fact scheduled foreclosure to occur just days after the execution of the POA. Defendant contends that, at that late hour, plaintiff lacked sufficient funds to bring the mortgage current, and Wells Fargo foreclosed on April 3, 2012, barely more than one month after the execution of the POA. Defendant concludes that plaintiff himself is solely responsible for the loss of his home, and that nevertheless, because he had ceased making mortgage payments for months prior to foreclosure, he could not have been entitled to $72,000 in equity.

Regarding the Wells Fargo bank account, defendant argues that she was a joint owner of the account prior to the execution of the POA, and in fact used it as a depository account for her paychecks. Defendant contends that, in alleging the amount in controversy, plaintiff has not accounted for her legal interest in the account. Defendant also submitted evidence showing that, at the time the POA was executed, the account balance was $3,519.97, not $7,500 as plaintiff alleges. Finally, defendant argues that plaintiff's allegations concerning the value of the account are speculative and conflicting, as he first alleges the account value was $7,500 and later alleges it was $28,000. Regarding plaintiff's veteran's benefits, defendant claims that plaintiff could not have received $18,392 during the relevant time period. In support, defendant claims, *inter alia*,

that the Veteran's Administration had significantly reduced plaintiff's monthly benefits following his felony conviction and incarceration, and was also recapturing previous benefits that it overpaid. Defendant also contends that plaintiff's veteran's benefits were deposited into the Wells Fargo account, and plaintiff is "stacking" his damages claims by claiming damages for loss of the Wells Fargo account and then separately claiming damages for loss of the veteran's benefits.

Defendant also argues that plaintiff's claim of loss of $12,000 in home furnishings is made in bad faith because she did not sell them or otherwise convert them for her own gain. Instead, defendant, at plaintiff's instruction, distributed plaintiff's belongings to his daughter, mother, and uncle. Defendant also argues that plaintiff neither identifies the home furnishings at issue, nor provides anything tending to substantiate their value. Defendant avers that plaintiff's claim regarding the Nissan Altima is made in bad faith because the vehicle was rendered a loss due to hail damage during a storm, not due to an accident or act on defendant's part. Defendant provides photographs of such damage. Defendant also argues that it is improper for plaintiff to claim damages against her in the amount of $10,000 for the Nissan Altima because his insurance company has already compensated him for the vehicle's loss in the amount of $7,569.89. Finally, defendant claims that plaintiff has offered nothing to substantiate his claim of loss of $10,000 in "incidental assets," his claim of punitive damages are purely speculative and he has established no entitlement to them, and he has brought this action in the wrong venue.

Before filing the instant motion to dismiss, defendant filed a "Disclosure of Organizational Interests Certificate" bearing the caption of a different civil case. This document includes no information relevant to the defendant, and appears to have been erroneously filed in this matter. Subsequently, plaintiff filed an amended document in an apparent attempt to clear

up the confusion, stating she is an individual person, and is not a governmental party or any form of corporation, company or partnership. After the motion to dismiss was filed, plaintiff filed a document addressing the Disclosure of Organizational Interests Certificate and the amendment thereto. Therein, he claimed that defendant was attempting to mislead and distract the Court, and he reasserted, in conclusory fashion, that the defendant absconded with or otherwise depleted his assets. He offered nothing tending to substantiate the amount of damages he alleged in the complaint, or to address defendant's questions regarding the amount in controversy he alleged. He has not filed anything specifically directed to the instant motion.

**Discussion**

Defendant concedes that the complaint alleges an amount in controversy that exceeds $75,000, as 28 U.S.C. § 1332 requires, but questions the legitimacy of the amount claimed. "[W]hen a federal complaint alleges a sufficient amount in controversy to establish diversity jurisdiction, but the opposing party or the court questions whether the amount alleged is legitimate, the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence." *State of Mo. ex rel. Pemiscot Cty., Mo. v. Western Sur. Co.*, 51 F.3d 170, 173 (8th Cir. 1995) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). The plaintiff's allegations of the requisite jurisdictional amount are not necessarily dispositive of the issue. *Id.* (citing *Zunamon v. Brown*, 418 F.2d 883, 885 (8th Cir. 1969)); *see also Trimble v. Asarco, Inc.*, 232 F.3d 946, 953 (8th Cir. 2000) (overruled on other grounds by *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 125 S.Ct. 2611 (2005)) ("no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claim."). Once jurisdiction is challenged, if the Court is satisfied to a legal certainty that the plaintiff was

never entitled to recover the requisite amount, and his claim was therefore feigned for the purpose of conferring jurisdiction, the suit will be dismissed. *State of Mo. ex rel. Pemiscot Cty., Mo.*, 51 F.3d at 173 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

In the case at bar, there are no facts alleged in the complaint that serve to establish the amount of plaintiff's damages, defendant has questioned the legitimacy of the amount claimed, and plaintiff has filed nothing in an attempt to establish the legitimacy of such amount. The Court doubts whether the amount claimed is legitimate, and is somewhat concerned that plaintiff may have brought this action to harass the defendant or for some other improper purpose. Thus, in accordance with the foregoing precedent, the Court will require plaintiff to show, by a preponderance of the evidence, that the amount claimed is legitimate. The Court will also require plaintiff to provide information to resolve the issue of the proper venue of this action, including the state of his legal residence immediately preceding his incarceration in Missouri, and why he claimed that a substantial part of the events or omissions giving rise to his claims occurred in this judicial district. If plaintiff believes that there is some other basis for this Court's jurisdiction over this action, he may so assert. The instant motion will be held in abeyance, and this matter will not proceed, to allow plaintiff time to respond. However, plaintiff's failure to timely respond shall result in the dismissal of this action without further notice.

Accordingly,

**IT IS HEREBY ORDERED** that, within thirty (30) days of the date of this Memorandum and Order, plaintiff shall show, by a preponderance of the evidence, that the amount in controversy alleged in the complaint is greater than the jurisdictional amount.

**IT IS FURTHER ORDERED** that, within thirty (30) days of the date of this Memorandum and Order, plaintiff shall provide information to the Court concerning the state of his legal residence immediately preceding his present incarceration, and what events or omissions giving rise to the claims asserted in the complaint occurred in this judicial district.

Dated this 13th day of September, 2018.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE